**WERBUNGS UND COMMERZ UNION AUSTALT, Plaintiff,**

v.

**COLLECTORS' GUILD, LTD., Defendant.**

No. 84 Civ. 7393 (CHT).

United States District Court, S.D. New York.

Dec. 30, 1991.

---

Cinque & Cinque, P.C. (Robert Cinque, of counsel), New York City, for plaintiff.

Marc Stuart Goldberg & Associates, P.C. (Marc Stuart Goldberg, of counsel), and Mait, Wang & Simmons (William R. Mait, of counsel), New York City, for defendant.

Stroock & Stroock & Lavan (Alvin K. Hellerstein and Edward P. Grosz, of counsel), New York City, for intervenor-applicant.

## OPINION

TENNEY, District Judge.

Pursuant to a jury verdict in favor of plaintiff Werbungs und Commerz Union Austalt ("Werbungs"), this court entered a judgment on December 29, 1989, ordering defendant Collectors' Guild, Ltd. ("Collectors' Guild") to pay Werbungs $895,466.06. Collectors' Guild then filed an appeal and posted a supersedeas bond in order to stay execution of the judgment pending appeal. The Second Circuit affirmed the judgment as to liability, but reversed and remanded the damages award. *Werbungs Und Com-*

*merz Union Austalt v. Collectors' Guild, Ltd.,* 930 F.2d 1021 (1991). After Collectors' Guild filed for bankruptcy, the parties decided to settle for the amount of the bond, whereupon the bankruptcy court entered an Order containing the parties' Stipulation of Settlement. Werbungs now moves in this court for an order directing the bonding company, Fidelity and Deposit Company of Maryland ("Fidelity"), to pay Werbungs the full value of the bond. In addition, Permal Capital Partners, L.P. ("Permal")—an equity owner in Collectors' Guild—moves to intervene as a party-defendant pursuant to Fed.R.Civ.Pro. 24(a). For the reasons set forth below, the court grants Permal's motion to intervene, denies Werbung's motion to compel payment of the bond, and remands the issue of payment of the bond to the bankruptcy court.

## BACKGROUND

This case arises out of two contracts entered into in 1969 between the plaintiff Werbungs and the predecessor-in-interest of defendant Collectors' Guild. *Werbungs,* 930 F.2d at 1023. Werbungs commenced an action against Collectors' Guild in 1987, claiming that under the contracts, it was entitled to the income derived from lithographic reproductions of illustrations by the artist Salvador Dali. *See id.* After a trial in December 1989, a jury found Collectors' Guild liable for breach of contract and awarded Werbungs damages in the amount of $1,140,000. *Id.* at 1025. This court granted a remittur to Collectors' Guild (reducing the damages award to $717,915) and entered a judgment, including interest, in the amount of $895,466.06. *See id.; Werbungs Und Commerz Union Austalt v. Collectors Guild, Ltd.,* 728 F.Supp. 975 at 979–80(S.D.N.Y.1989); Affidavit of Robert W. Cinque, Esq. ("Cinque Aff.") (sworn to Sept. 18, 1991), Exh. A.

Collectors' Guild then filed a notice of appeal in the Second Circuit and a supersedeas bond in the district court to stay execution of the judgment. The bond was secured by a letter of credit issued by Marine Midland Bank, N.A. ("Marine Midland"), which named Fidelity as the benefi-

ciary.[1] Mait Aff., Exh. 2; Supplemental Affidavit of Thomas DeLitto ("Supp. DeLitto Aff.") (sworn to Oct. 25, 1991), ¶¶ 5–6; Affidavit of Edward P. Grosz ("Grosz Aff.") (sworn to September 27, 1991) ¶ 8. The letter of credit, in turn, was collateralized by a certificate of deposit in the amount of $300,000 which Permal had assigned to Marine Midland. Supp. DeLitto Aff. ¶ 6. Permal is a limited partnership formed under the laws of Delaware with its principal place of business in Nassau, the Bahamas. *See* Supp. DeLitto Aff. ¶ 2. Permal engages in the business of capital investments and was an investor in Collectors' Guild. *Id.* ¶ 4.

On May 9, 1990, the appeal was argued before the Second Circuit. On June 12, 1990, Collectors' Guild filed a voluntary petition in the bankruptcy court pursuant to Chapter 11 of the Bankruptcy Code.[2] *Werbungs*, 930 F.2d at 1023. On April 18, 1991, the Second Circuit affirmed the judgment as to liability, but vacated the damages award and remanded the issue for retrial. *Id.* at 1025, 1028. The appellate court found that this court's jury instructions improperly allowed the jury to penalize Collectors' Guild for certain abuses it committed during discovery. *Id.* at 1027. Furthermore, the court stated that the remittitur could not cure the defective instruction because the error had infected the jury's entire consideration of the damages issue. *Id.* at 1027–28.

According to Permal, the bankruptcy estate of Collectors' Guild contains no assets from which a distribution could be made if Werbungs were awarded damages on remand. *See* Memorandum of Law in Support of Permal's Motion to Intervene and In Opposition to Plaintiff's Motion to Compel Payment Under a Supersedeas Bond ("Permal's Mem. in Opp.") at 2. Furthermore, Collectors' Guild lacks the resources to re-try the damages issue. *Id.* Because the one potential asset available to Werbungs is the value of the bond, Werbungs

and Collectors' Guild signed a Stipulation of Settlement for the amount of the bond, which was "So Ordered" by the bankruptcy court on August 24, 1991. *See* Cinque Aff., Exh. C. The settlement agreement states that Werbungs and the Bankruptcy Trustee "agree to a modification of the Judgment such that [Werbungs] will accept the sum of $300,000.00 in full and complete satisfaction of the judgment ... to come solely from the proceeds of the Supersedeas Bond." *Id.* The settlement also provides that "upon the receipt by [Werbungs] of the $300,000.00 ... [Werbungs] shall pay the sum of $10,000.00 to the Debtor's estate." Grosz Aff., Exh. O. Pursuant to this settlement order in the bankruptcy court, Werbungs now moves in this court to compel payment of the bond by Fidelity to Werbungs. Permal has moved to intervene as a party-defendant in order to join Fidelity in opposing Werbungs' motion.

## DISCUSSION

### I. INTERVENTION

Rule 24(a) of the Federal Rules of Civil Procedure provides, in relevant part, that

> [u]pon timely application anyone shall be permitted to intervene in an action ... when the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

Werbungs objects to Permal's motion on three grounds, each of which will be addressed in turn: (1) the motion is untimely; (2) Permal has not filed the necessary pleadings; and (3) Permal does not have a sufficient interest in the subject matter of the litigation.

---

1. The letter of credit listed Collectors' Guild as the "account party" and Permal as the "applicant." Affidavit of William R. Mait ("Mait Aff.") (sworn to October 8, 1991), Exh. 2.

2. After the bankruptcy petition was filed, the appeal was stayed until December 7, 1990 pursuant to 11 U.S.C. § 362(a)(1). *Werbungs*, 930 F.2d at 1023.

### A. Timeliness

■ Whether a motion to intervene is timely is an issue within the sound discretion of the trial court and should be determined in light of all the circumstances of the case. *NAACP v. New York*, 413 U.S. 345, 365–66, 93 S.Ct. 2591, 2602–03, 37 L.Ed.2d 648 (1973).

■ Werbungs argues that Permal's motion is untimely because it was filed almost two years after Permal was aware of its interest in the case. *See* Memorandum of Points and Authorities in Opposition to Motion to Intervene ("Pl.Mem. in Opp.") at 4. Although Permal has been directly and indirectly involved with Collectors' Guild throughout this litigation, *see* Grosz Aff. ¶¶ 7, 10–12, its application for intervention is not untimely. Because Permal owns the collateral for the letter of credit securing the bond, it did not have a direct interest in the action until Werbungs made its motion to compel payment of the bond. In light of all the circumstances of this case, therefore, the court finds that Permal's motion to intervene is timely.

### B. Pleadings

■ A motion to intervene must be accompanied by a pleading which sets forth the claim or defense for which intervention is sought. *See* J. Moore, Moore's Federal Practice (2d ed.) ¶ 24.14. Although usually, the movant may not merely adopt a pleading of another party, a certain amount of leeway is allowed where such a practice will not prejudice any of the parties. *See Spring Construction Co. v. Harris*, 614 F.2d 374 (4th Cir.1980) (intervention granted despite failure to submit pleading because intervenor's petition and accompanying affidavit set forth sufficient facts and allegations to give plaintiff notice, thus making the error nonprejudicial); *McCausland v. Shareholders Mgt. Co.*, 52 F.R.D. 521 (S.D.N.Y.1971) (failure to provide pleading not fatal when counsel's affidavit in support of motion stated that each intervenor would adopt present complaint).

■ Here, instead of filing its own pleading, Permal has merely adopted the Answer of Collectors' Guild. *See* Grosz Aff. ¶ 23. Although this practice does not comport with Rule 24, Permal has submitted affidavits and briefs which set forth sufficient facts and allegations to give all parties notice of its claims in relation to the bond. Because Permal's failure to file its own pleading has not prejudiced any of the parties, the court will not allow Permal's error to bar its application to intervene.[3]

### C. Permal's Interest in the Action

■ Under Rule 24(a), the "interest" of the intervenor-applicant must be significantly protectable such that it will be directly and immediately affected by the litigation. *Restor–A–Dent Dental Laboratories, Inc. v. Certified Alloy Prod. Inc.*, 725 F.2d 871, 874 (2d Cir.1984). An applicant's interest is not significantly protectable if it will be affected only remotely or contingently by the litigation. *See id.* In addition, the applicant must show that the existing parties will not adequately represent its interests. *See United States Postal Service v. Brennan*, 579 F.2d 188 (2d Cir. 1978).

■ Here, Werbungs contends that Permal's interest is not significantly protectable because Permal is, at most, only a shareholder or creditor of Collectors' Guild. In support of its argument, Werbungs cites *Gould v. Aleco, Inc.*, 883 F.2d 281 (4th Cir.1989), *cert. denied*, 493 U.S. 1058, 110 S.Ct. 870, 107 L.Ed.2d 953 (1989), a case in which the court stated that even though a company's stockholders have a stake in the outcome of litigation involving the company, "this alone is insufficient to imbue them with the degree of interest required

---

**3.** The court rejects Werbungs' argument that Permal does not have standing to sue under § 1312 of the New York Business Corporation Law because Permal is not authorized to do business in New York. While it is true that foreign corporations and foreign partnerships may not initiate lawsuits in New York, they are not barred from defending actions in this jurisdiction. *See* N.Y.Bus.Corp.Law § 1312 (McKinney 1986 & Supp.1991); N.Y. Partnership Law § 120–f(3) (McKinney 1988). Thus, whether or not Permal is authorized to do business in New York does not affect its ability to intervene as a party defendant in this action.

for Rule 24(a) intervention." In this case, however, Permal is more than a shareholder or creditor of Collectors' Guild. Permal procured the letter of credit which secures the bond and is the owner of the collateral securing the letter of credit.[4] Furthermore, no party can adequately represent Permal's interest: Collectors' Guild's interests are identical to Werbungs' in that it wants Fidelity to pay the amount of the bond to Werbungs to satisfy the parties' settlement agreement; and since Fidelity is merely a stakeholder, it is indifferent as to whether it must pay Werbungs or Permal, so long as it only has to pay one of them.

The court concludes, therefore, that Permal has a sufficiently protectable interest in the proceeds of the bond and that no other party could adequately represent that interest. Accordingly, the motion to intervene is granted.

## II. THE BOND

■ There is no federal statute or rule of civil procedure that defines the conditions which must occur in order to trigger a surety's obligation under a supersedeas bond. *Tennessee Valley Auth. v. Atlas Machine & Iron Works, Inc.*, 803 F.2d 794, 798 (4th Cir.1986). Thus, the extent of the surety's liability is governed by the bond's specific language. *See id.; see also Neeley v. Bankers Trust Co. of Texas*, 848 F.2d 658, 659 (5th Cir.1988).

■ Here, the bond provides the following:

[Fidelity] ... does hereby undertake in the sum of three hundred thousand and no/100 ($300,000) that if [Collector's Guild] shall satisfy the judgment herein in full together with cost, interest and damages for delay, if for any reason the appeal is dismissed or if the judgment is affirmed, and shall satisfy in full such modification of the judgment and such costs, interest, and damages as the Appellate Court may adjudge and award, then this obligation shall be void, other-

wise the same shall be and remain in full force and virtue.

Cinque Aff., Exh. B. In other words, the bond remains in effect unless one of two conditions is met: (1) the appellant satisfies the judgment after the appeal is either dismissed or the judgment is affirmed; or (2) the appellant satisfies any modification of the judgment as the appellate court awards. Because neither of these conditions has occurred, Fidelity's obligation under the bond has not been discharged.

The parties do not dispute the fact that there was neither a dismissal of the appeal nor an affirmance of the judgment. The parties disagree, however, as to whether the Second Circuit's remand constituted a modification of the judgment. While the parties urge that the resolution of this issue will determine whether the bond is still in effect, the court disagrees. By its own language, the bond remains in effect regardless of whether the Second Circuit's remand constituted a modification of the judgment: if the remand was not a modification, then that condition has not been met; and even if the remand was a modification, the condition has still not been met because Collectors' Guild has not "satisf[ied] in full such modification." The bond, therefore, remains in effect.

Fidelity and Permal argue that the bond was discharged because there was neither a dismissal of the appeal nor an affirmance or modification of the district court's judgment. *See* Memorandum of Law Submitted on Behalf of Fidelity and Deposit Company of Maryland in Opposition to Motion to Compel Payment under the Supersedeas Bond ("Fidelity's Mem. in Opp.") at 3–4; Permal's Mem. in Opp. at 9. Implicit in their argument, however, is an interpretation of the bond's language as automatically discharging Fidelity's obligation unless one of the specified conditions occurs. *See* Fidelity's Mem. in Opp. at 4; Permal's Mem. in Opp. at 9. As the court has indicated, this interpretation contradicts the plain language of the bond.

---

**4.** The court rejects Werbungs' contention that the subject of this action is the ownership of and the revenue derived from the Dali prints.

While this was the subject of the underlying action, the sole issue in this proceeding is the payment of the bond.

Fidelity and Permal also rely heavily on *Neeley v. Bankers Trust Co. of Texas*, 848 F.2d 658 (5th Cir.1988). As in the instant case, the appellate court in *Neeley* vacated a damages award and remanded the issue for a new trial. *Id.* at 659. The *Neeley* court held that the surety was released from its obligation under the bond. *Id.* at 658. The bond in *Neeley*, however, is quite different from the one at issue here. In *Neeley*, the bond provided that

> [a]ppellants shall prosecute their appeal with effect; and in case the Judgment of the United States Court of Appeals or the United States Supreme Court shall be against them, they shall perform its judgment, sentence or decree, and pay all such damages as said Court may award against them.

*Id.* at 659. Thus, in *Neeley*, the surety's obligation was triggered only if the appellate court's judgment was against the appellant, whereas here, the surety's obligation remains in effect unless one of the specified conditions occurs. *Neeley*, therefore, is inapplicable to this case.

## III. PAYMENT OF THE BOND

Defendants argue in the alternative that even if the bond is still in effect, it cannot be paid to Werbungs because Collectors' Guild abandoned its appeal by entering into "a collusive bargain" without notice to Fidelity—i.e., by settling instead of retrying the damages portion of the case. *See* Fidelity's Mem. in Opp. at 8–10; Permal's Mem. in Opp. at 18–20. Furthermore, Fidelity objects to any payment to Werbungs because the settlement agreement provides that Werbungs' shall pay $10,000 to Collectors' Guild bankruptcy estate. *See* Fidelity's Mem. in Opp. at 9–10. This arrangement, according to Fidelity, will effectively make Fidelity's liability greater than that of the principal Collectors' Guild. *Id.*

The court recognizes that these arguments may well have merit. However, because the bankruptcy court did not make any findings of fact or conclusions of law when it "so ordered" the Stipulation of Settlement, this court is presently unable to determine the rights of all the parties.

For example, Fidelity contends that the letter of credit securing the bond was never part of the bankruptcy estate, and thus, the bankruptcy court does not have jurisdiction over that asset. *See* Mait Aff. ¶ 10. Without this and other factual determinations made by the bankruptcy court, the court cannot rule on the legality of the settlement order. The court, therefore, remands the issue to the bankruptcy court for findings of fact and conclusions of law in light of Fidelity's and Permal's arguments. *See* 28 U.S.C. § 157(c)(1). If, after these determinations have been made, any of the parties is dissatisfied with the result, that party can appeal the bankruptcy court's order pursuant to 28 U.S.C. § 158(a), (c).

## CONCLUSION

For the reasons set forth above, Permal's motion to intervene is granted, Werbungs' motion to compel payment of the supersedeas bond is denied, and the issue of payment of the bond is remanded to the bankruptcy court for findings of fact and conclusions of law.

So ordered.